**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

NELSON CONIGLIO and JOYCE
CONIGLIO, husband and wife

      Plaintiff,

v.                                                                 Case No. 8:14-CV-01628-EAK-MAP

BANK OF AMERICA, N.A., a foreign
corporation, f/k/a BAC Home Loans Servicing,
LP,

      Defendant.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S**
**RELIEF FROM JUDGMENT MOTION AND RELATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 60, and other applicable law, Nelson Coniglio

and Joyce Coniglio (together, the "Plaintiffs"), respond as follows to the "Bank of America N.A.'s

Motion to Vacate and Set Aside Default and Default Final Judgment and Incorporated Memorandum

of Law" (the "Relief from Judgment Motion") (Dkt. 22) filed by Bank of America, N.A., a foreign

corporation, f/k/a BAC Home Loans Servicing (the "Defendant") on or about November 5, 2014, in

this action (this "Action"):

**A.   Background Allegations**

1.       On July 2, 2014, the Plaintiffs initiated this Action by filing a "Complaint and

Demand for Jury Trial" (the "Complaint") (Dkt. 1) seeking relief as against the Defendant for

violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 et seq. (the "TCPA"),

the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA"), and the Florida

Consumer Collection Practices Act, §§ 559.55, et seq., Florida Statutes (the "FCCPA").

2.       On July 2, 2014, the Clerk of this Court (the "Clerk") issued a summons for the

Defendant (Dkt. 2), and initial process was served upon the Defendant on or as of July 10, 2014 at

the Defendant's principal place of business and corporate headquarters located at 100 North Tryon

Street, Charlotte NC, 28202, as evidenced by the return of service filed in this Action on or as of July 14, 2014 and again on August 18, 2014 (Dkt. 5 and 15).

3.      On August 1, 2014, the Plaintiffs filed their motion for entry of clerk's default against the Defendant (the "Default Motion") (Dkt. 6), and the Clerk entered a default against the Defendant (the "Clerk's Default") (Dkt. 7) in response to the same on August 4, 2014.

4.      On August 15, 2014, the Plaintiffs filed their motion for default judgment against the Defendant ("Default Judgment Motion") (Dkt. 8) for relief related only to violations of the TCPA and FCCPA, which included a series of affidavits that together support all the relief requested therein under Federal Rule of Civil Procedure 55(b).  On August 18, 2014, the Default Judgment Motion was amended ("Amended Default Judgment Motion") (Dkt. 13), and supplemented by the affidavits of Nelson Coniglio, Joyce Coniglio, and Jason Anthony Coniglio (together, the "Plaintiffs Affidavits") (Dkt. 10, 11, and 12).   All of the foregoing are referred to herein as the "Default Judgment Materials."

5.      On October 21, 2014, this Court considered the Default Judgment Materials and entered its "Order" (the "Default Judgment Order") (Dkt. 16), granting the Plaintiffs' relief under Federal Rule of Civil Procedure 55(b).  Also on October 21, 2014, and in a manner consistent with the Default Judgment Order, the Clerk entered a "Judgment in a Civil Case" (the "Judgment") (Dkt. 18), in the amount of $1,051,000, in favor of the Plaintiffs and against the Defendant, together with court costs and reasonable attorneys' fees.

### B.  Allegations Relating to Relief Requested

6.      On November 4, 2014, the Defendant, through its counsel Liebler, Gonzalez & Portuondo ("Defendant's Counsel,") filed "Bank of America, N.A.'s Motion to Stay Execution of Final Default Judgment Pending Disposition of Motion to Vacate and Set Aside Default and Default Judgment and Incorporated Memorandum of Law" (Dkt. 19) pursuant to the National Banking Act and Fed. R. Civ. P. 62(b) ("Stay of Execution Motion").

7.      On November 5, 2014, the Defendant filed the Relief from Judgment Motion that seeks to vacate the Default and relief from the Judgment pursuant to Federal Rules of Civil Procedure 55 and 60(b).

8.      Pursuant to Federal Rules of Civil Procedure 60(b), grounds for relief from a judgment, order, or proceeding, including the Relief from Judgment Motion, are as follows:

> (b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING.  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

The Relief from Judgment Motion is therefore evaluated in light of the presence or absence of events and circumstances justifying relief.

9.      The Defendant has identified no facts and circumstances that justify relief from the Judgment.    All relief requested in the Complaint has been supported by affidavits in a manner consistent with applicable law, justifying entry of the Judgment.

## C.  Memorandum of Law

Federal Rules of Civil Procedure 55(b) and 60(b) grant courts discretion in setting aside the entry of a default or default judgment. Insurance Co. of North America v. Morrison, 154 F.R.D. 278, 279 (M.D. Fla. 1994); Gulf Coast Fans, Inc. v. Midwest Elec. Importers, Inc., 740 F.2d 1499, 1510 (11th Cir. 1984); Robinson v. U.S., 734 F.2d 735, 739 (11th Cir. 1984). The Eleventh Circuit recognizes a significant difference between the standard to set aside a default and the standard in vacating a default judgment. E.E.O.C. v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 528 (11th

Cir. 1990); Jones v. Harrell, 858 F.2d 667, 669 (11th Cir. 1988); U.S. v. One Parcel of Real Property, 763 F.2d 181, 183 (5th Cir. 1985); see also Meehan v. Snow, 652 F.2d 274, 276–77 (2d Cir. 1981) (per curiam) ("The excusable neglect standard that courts apply in setting aside a default judgment is more rigorous than the good cause standard that is utilized in setting aside an entry of default."). In the Relief from Judgment Motion, the Defendant consistently confuses the standards in an attempt to be bound by the less rigorous standard for vacating a clerk's default prior to the entry of a final default judgment.   In this Action, the Court has already entered the Judgment, and the relief requested in the Relief from Judgment Motion must be viewed from the "more rigorous excusable neglect standard" rather than the good cause standard applicable to motions for relief from a mere default under Rule 55(b).  The Defendant claims that Rule 60(b)(1), (3), and (6) are applicable here, however, the Defendant has not shown excusable neglect, good cause, or a meritorious defense sufficient to give rise to relief from the Judgment entered after careful consideration of the Default Judgment Materials and the record herein.

I.    **The Defendant Fails to Allege Facts Sufficient for Relief Under Rule 60(b)(1)**

Under Rule 60(b)(1), "mistake, inadvertence, surprise, or excusable neglect" can serve as a basis to vacate a default judgment. In addition to a showing of mistake, inadvertence, surprise, or excusable neglect, the Defendant must have a meritorious defense, act promptly, and show that vacating the judgment will not unduly prejudice the non-moving party. Insurance Co. of North America v. Morrison, 154 F.R.D. at 280.  The Defendant must show all of these factors in order to justify relief.  "[A] determination of excusable neglect is an equitable one that necessarily involves consideration of all three elements—a meritorious defense, prejudice, and a good reason for not responding to the complaint." Valdez v. Feltman (In re Worldwide Web Systems, Inc.), 328 F.3d 1291, 1297 (11th Cir. 2003)

a.    The Defendant Has Not and Cannot Show Excusable Neglect

The Defendant fails to characterize the basis of its failure to respond timely to the Complaint as mistake, inadvertence, surprise, or excusable neglect as per Rule 60(b), but instead elects to aver that it had "good reasons for failing to respond to the Complaint." (Dkt. 22, p. 4). The Defendant appropriately utilizes this Court's opinion in Insurance Co. of North America v. Morrison (the "LaSalle Opinion") as a benchmark for its good reasons as the facts seem nearly identical. The LaSalle Opinion stands for the proposition that neither "clerical error" nor "oversight" constitute excusable neglect. Insurance Co. of North America v. Morrison 154 F.R.D. at 280 (citing Tarmac Florida Inc. v. Employers Ins. of Wausau, 706 F. Supp. 40 (S.D. Fla. 1989)). The reason that "clerical error" and "oversight" do not rise to the level of excusable neglect is that a party has the obligation to establish safeguards to make sure that the complaint and summons are properly routed. In that regard, this Court recognized that the Eleventh Circuit has clearly stated that:

> Default that is caused by the movant's failure to establish minimum procedural safeguards for determining that action in response to a summons and complaint is being taken does not constitute default through excusable neglect.

Insurance Co. of North America v. Morrison 154 F.R.D. at 280 (citing Gibbs v. Air Canada, 810 F.2d 1529 (11th Cir. 1987)); see also Davis v. Safeway Stores, Inc., 532 F.2d 489, 490 (5th Cir. 1976) (finding no excusable neglect when the defendant timely sent the complaint to its insurance company and there was no communication between defendant and insurance company for three weeks after latter received copy of complaint, indicating an absence of minimum procedural safeguards); Baez v. S.S. Kresge Co., 518 F.2d 349, 350 (5th Cir. 1975) (finding no excusable neglect when complaint received in timely manner by defendant was lost in mail en route to counsel because of failure to establish minimum procedural safeguards). Therefore, the Defendant had an obligation to ensure that the Complaint and summons were properly and efficiently routed so that a proper response was timely filed, and to maintain sufficient safeguards to ensure that issues of "clerical error" or "oversight" would not hinder the obligation to file a timely response.

The Defendant attempts to distinguish this Action from the <u>LaSalle Opinion</u> by claiming that (a) the Defendant read the Complaint, (b) the Defendant has "follow-up" procedures, and (c) the Defendant had no notice of the Complaint.  As described in the Relief from Judgment Motion and supporting affidavits, the Complaint was served on Ashley Noble, the assistant manager at the Defendant's corporate headquarters and principal place of business, who transferred it to a Legal Order Processing ("LOP") center in Utica, NY ("NY LOP") (Dkt. 22-1 at p. 2, ¶3). The NY LOP noted receipt of the Complaint, and though vaguely stated, Ashley Noble's affidavit indicates that the standard procedure of the Defendant was to include the Complaint in a package containing other documentation sent to the Delaware LOP (Dkt. 22-1 at p. 6, ¶16-17).  The package that would have theoretically carried the Complaint from the NY LOP to the Delaware LOP was received in Delaware; however, the Defendant has no record of the Complaint's receipt in the Delaware LOP (Dkt. 22-1, p.10-11, ¶15-18).[1]  According to the affidavit of Samantha M. Lamplugh, the Delaware LOP should have scanned the Complaint upon receipt and forwarded it to Bank of America's Legal Department by e-mail (Dkt. 22-1, p.10, ¶11).  There is no record of the Complaint being forwarded by the Delaware LOP to the Defendant's Legal Department (Dkt. 22-1, p.10-11, ¶15-18).  These allegations are insufficient to support the stringent excusable neglect standard.

*i.   The Defendant Neither Read Nor Analyzed the Complaint*

The Defendant fails to state that it read or analyzed the Complaint, but merely alleges that the Defendant's standard procedure is to review documentation received for completeness (i.e. whether the documents contain all appropriate pages) and for content (i.e. what type of legal process) (Dkt. 22-1, p. 6 ¶9-10). Similar to the <u>LaSalle Opinion</u>, the Defendant relied on a procedure of review and dissemination of the Complaint that is more analogous to a computer search rather than a detailed review of the Complaint.  There is no declaration that the Complaint at issue was reviewed, that the

---

[1] Though the affidavits filed in support of the Relief from Judgment Motion reference attachments, including postal records and call histories, no documentation is attached to support the Defendant's averments.

Complaint reached the Delaware LOP or that any of the standard procedures beyond arrival and logging at the Utica LOP occurred.

### ii. The Defendant Does Not Have Sufficient Follow-Up Procedures

The Defendant informs this Court of the high volume of documents that go through the Defendant's Delaware LOP center, stating that the average number of documentation received is "140,000 documents per month." (Dkt. 22-1, p. 11, ¶19). The Defendant informs the Court that there are procedures in place to direct the documents through the proper channels to end up in the proper hands. It appears that in the case of a complaint under the TCPA, FDCPA, and FCCPA served at the Defendant's headquarters, the protocol requires that the complaint change hands no less than five times: from the manager that received service to the NY LOP, then to the Delaware LOP, then to the Legal Department, and ultimately, the attorney handling the case. In this case, a clerical error or an oversight resulted in (a) the Complaint not being packaged and sent from the NY LOP to the Delaware LOP or (b) the Complaint not being logged in or forwarded from the Delaware LOP to the Legal Department, all administrative tasks handled by live human beings. Such clerical errors should be expected of employees; "we are only human." The remedying factor is to have minimum procedural safeguards to prevent such clerical errors from inhibiting the timely response to a complaint. The failure to have such safeguards is a legal bar to relief under Rule 60(b). Gibbs v. Air Canada, 810 F.2d 1529; Davis v. Safeway Stores, Inc., 532 F.2d at 490; Baez v. S.S. Kresge Co., 518 F.2d at 350.

Based on the high volume of incoming documents, the standard of reasonableness for the Defendant's minimum procedural safeguards should be heightened as compared to a small business that has never been sued and rarely receives litigation documents. Additionally, the fact that a complaint changes hands no less than five times prior to reaching the attorney that will file a response militates that there should be some system to ensure that a complaint completes that

journey, particularly when the transport involves an extraordinary amount of mail travel in today's digital age.

The Defendant, in its Relief from Judgment Motion, addresses no procedures to remedy or prevent oversight or clerical errors present in the handling of this Complaint.  The only procedural system alleged to be in place is that the "LOP division monitors the electronic mail messages to the Legal Department's litigation intake inbox to insure that no error receipt is received from the Legal Department's litigation intake inbox." (Dkt. 22, p. 10, ¶13).  This one procedural safety net is clearly insufficient because it covers only one of five transfers.  There is no "system of checking up on process to see that [the Complaint] has in fact reached its destination and that action is being taken" as required by the Eleventh Circuit in the Gibbs opinion.  810 F.2d 1537.  The Defendant failed to aver that it has procedures to verify that it systematically knows when complaints are served or to ensure that a complaint, after service, makes it through each of the procedural "protocols" in place by the Defendant.

### iii. The Defendant Had Notice of the Complaint

The Defendant clearly had notice of the Complaint as it was properly served on the Defendant at its corporate headquarters and principal place of business as set forth on the State of Florida Secretary of State's Division of Corporations website and on the website maintained by the Federal Deposit Insurance Corporation, one of the Defendant's largest regulators. The Plaintiffs followed the procedural practice under Rule 4, despite the permissible alternatives for service such as serving one of the "banking officers" at any branch located in the State of Florida where the level of sophistication may be less and the minimum procedural safeguards may be undermined.

The Defendant claims that it should have had more or additional notice due to counsel's alleged historical dealings; however, service specified under Rule 4 is all the notice required under the Federal Rules of Civil Procedure and the Local Rules of the Middle District of Florida.  The Defendant does not challenge the sufficiency of service under Rule 4, and notably does not cite a

single authority for the proposition that counsel was entitled to any additional notice.[2] The Defendant baselessly claims that counsel for the Plaintiffs should have notified the potential law firms representing the Defendant to divulge that a complaint was filed or that a default might be entered if no response is received.  This allegation is improper and the Defendant should not attempt to avoid the result of its negligence by attacking the Plaintiffs' actions which comport with the Federal Rules of Civil Procedure and all applicable law.

Further, the Defendant's counsel claims that they were counsel for the Defendant on two cases and that the Plaintiffs previously served an "opt out" letter that was received by the Defendant. The referenced "opt out" letter was sent by the Plaintiffs with respect to a large class action suit against the Defendant based on violations of the TCPA and the FDCPA, which was pending in in the District Court for the Northern District of California (the "Class Action Suit"). The Plaintiffs were never parties to the Class Action Suit as they chose to opt out. The Plaintiffs' counsel never made an appearance in the Class Action Suit. The Class Action Suit was settled by the Defendant under which it agreed to pay a settlement of over $32,000,000 for its illegal use of autodialing machines in its collection practices, which are the same general findings that supported the Judgment in this Action.

Though Plaintiffs' counsel was not required under the circumstances present in this Action to notify any of the Defendant's prior counsel, there are several reasons why the Plaintiffs would not draw an inference from the participation of the Defendant's counsel in the Class Action Suit as a demonstration of a clear intention to defend in this Action. First, the two actions are distinguishable in size, as the Class Action Suit was a large class potentially supporting judgments up to $500,000,000 and this Action is a two-plaintiff case involving just over $1,000,000. Second, the

---

[2] The Plaintiffs decline to address at great length the majority of the allegations of Defendant's counsel with respect to the prior dealings of Defendant's counsel and Morgan & Morgan.  These ad hominem attacks and allegations unnecessarily muddy the record, however, the Plaintiffs note that (a) the Morgan & Morgan firm has not represented the Plaintiffs in any other actions against the Defendant, and (b) the case referenced styled Schultz v. Bank of America is an action with an unrelated party filed as a breach of contract action in 2009 and is wholly unrelated in every way to this action.

Defendant's perceived liability was already developed through the Class Action Suit and the Defendant could determine its risk in similar actions. Third, the TCPA is essentially a strict liability statute where the award is based on the number of calls. In the Class Action Suit, the class of parties was undetermined and undeterminable from the inception of the case.  In this Action, there are two plaintiffs suing to recover based on a defined number of illegal calls.  If the Defendant's review of its records reflected that more than the number of defined calls in the Complaint were made during the relevant period, the Defendant may have motivation to intentionally consent to a judgment by default to avoid discovery and potentially an increased judgment. Fourth, with respect to the Class Action Suit, it was reported by Reuters that "Bank of America Corp spokeswoman Betty Riess said in an emailed statement … 'Bank of America denies the allegations, but agreed to settle the claims to avoid further legal costs.'" Reuters (U.S. Edition) September 30, 2013; http://www.reuters.com/article/2013/09/30/bankofamerica-robocalls-settle/   idUSL1N0HQ0HU2013 0930. The FDCPA contains an award of attorney's fees to the prevailing plaintiff and the Defendant would be responsible for its own fees and costs incurred. If the Defendant was willing to pay $32,000,000 to avoid litigation costs in the Class Action Suit, then the Defendant could, as a matter of business judgment, decide not to defend to avoid litigation costs. Therefore, not defending the case could be consistent with the Defendant's previous actions in the Class Action Suit.

The Defendant admits that it was aware that the Plaintiffs had opted out of the Class Action Suit by letter, which was on the letterhead of the Plaintiffs' legal counsel. Knowing that the Plaintiffs had opted out of the Class Action Suit and that the Plaintiffs were represented by counsel, the standard of reasonableness for the Defendant's minimum procedural safeguards should be heightened and it should take steps to make sure that it receives notice of a complaint when filed. The Defendant avers no steps taken to protect itself in light of the notice provided by the Plaintiffs and the reasonable inference that the Plaintiffs decided to file their own lawsuit.

b.      The Defendant Has Not Shown a Meritorious Defense

The Defendant has not sufficiently alleged a meritorious defense to support relief from the

Judgment.  As recognized by a long history of cases deciding this issue,

> [i]t is universally recognized as an essential to the obtaining of relief from a default
> judgment entered with jurisdiction that there should appear in the motion a clear and
> specific statement showing, not by conclusion, but by definite recitation of facts, that
> an injustice has been probably done by the judgment, in that the debt or demand was
> not owing; that there was a valid defense to it, and that on another trial there will in
> reasonable probability be a different result.

Moldwood Corporation v. A.B. Stutts, 410 F.2d 351, 352 (5th Cir. 1969); see also Worldwide Web

Systems, Inc., 328 F.3d at 1296 ("to establish a meritorious defense, the moving party must make an

affirmative showing of a defense that is likely to be successful.").

### i.   TCPA Statute of Limitations is Insufficient as a Meritorious Defense

As its alleged first "meritorious defense," the Defendant asserts that it only made calls to the

Plaintiffs between August 24, 2007 and September 25, 2009, and such calls are barred by the four-

year statute of limitations.  Although the Complaint alleges that the calls began on May 9, 2009, the

Plaintiffs Affidavits in support of the Judgment attest that the Defendant made approximately ten

(10) calls per month in the preceding four (4) years prior to filing the Complaint, which is within the

statute of limitations. (Dkt. 10, ¶15; Dkt. 11, ¶15). Thus, any assertion to the contrary is merely a

general denial of the allegations in the Complaint, which is insufficient to satisfy the burden of

showing a meritorious defense. See Worldwide Web Systems, Inc., 328 F.3d at 1296 (a moving party

cannot satisfy the burden of showing a meritorious defense by asserting a general denial).

### ii.   Random Automatic Telephone Dialing System

As its alleged second "meritorious defense," the Defendant argues that the dialer it used to

make the subject calls did not fall within the definition of an "automatic telephone dialing system"

("ATDS") under the TCPA because it has been disabled to prevent the use of a ransom or sequential

number generator. (Dkt. 22, p. 12).  Instead, the Defendant claims that the dialer used is "configured

to make calls from a list of numbers and according to certain rules." Notwithstanding the vagueness

of this statement, even if taken as true, the described dialer is nevertheless an ATDS under the

TCPA. According to the Federal Communications Commission ("FCC"), a predictive dialer is

defined as:

> [E]quipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers . . . [i]n most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at rate to ensure that when a consumer answers the phone, a sales person is available to take the call.

2003 TCPA Order, 18 FCC Rcd. at 14091, ¶ 131 (emphasis added). A dialer that "calls from a list of

numbers," as the Defendant admitted it used, is a predictive dialer that calls from "a database of

numbers." According to the 2008 TCPA Order issued by the FCC, "a predictive dialer constitutes an

automatic telephone dialing system and is subject to the TCPA's restrictions on the use of

autodialers." 2008 TCPA Order 23 FCC Rcd. at 566, ¶12; see also Mais v. Gulf Coast Collection

Bureau, Inc., 768 F.3d 1110, 1121 (11th Cir. 2014) (orders adopted by the FCC have the force of law

according to the Hobbs Act). Other courts have held, in light of the FCC's ruling, that even if

software is not used to generate random or sequential numbers, a dialer still constitutes an ATDS if it

automatically dials numbers from a pre-programmed list. Lardner v. Diversified Consultants Inc.,

1:13-CV-22751-UU, 2014 WL 1778960, at *5 (S.D. Fla. 2014). Thus, the dialing system admittedly

used by the Defendant is a clear violation of the TCPA and this defense is without any merit.

### iii.   The Plaintiffs Did Not Consent to the Phone Calls

As its alleged third "meritorious defense," the Defendant claims that Nelson Coniglio

consented to receiving calls on his cellular phone because he submitted the number with his loan

application and in written correspondence. Those documents, however, are all from 2006, and this

argument ignores that on November 30, 2009, U.S. Loan Mitigation, LLC sent correspondence on

behalf of the Plaintiffs to the Defendant demanding that it cease and desist any further

communication. A copy of that correspondence is attached to the Complaint as Exhibit "B," and has been authenticated by the Plaintiffs Affidavits. Accordingly, neither of the Plaintiffs gave consent for the phone calls that occurred within the relevant statutory time period and this defense is without merit.

### iv.  The Plaintiffs Did Not Seek Relief Under the FDCPA in the Default Motion

The Defendant's alleged fourth "meritorious defense" that it is not a "debt collector" within the meaning of the FDCPA is a red herring. The Amended Default Judgment Motion only sought relief under the TCPA and FCCPA, and not the FDCPA. (Dkt. 13, p. 3, ¶13). Accordingly, the Default Judgment Order (Dkt. 16) only granted relief under those statutes. Therefore, any defense as to the FDCPA is irrelevant.

### v.  Bona Fide Error Defense

The Defendant argues, as a fifth "meritorious defense" that any violation of the FDCPA and FCCPA was not intentional and a bona fide error. The Supreme Court has held that the bona fide error defense in 15 U.S.C. § 1692k(c) is inapplicable to a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA. Jerman v. Carlisle, McNellie, Rini, Kramer, & Ulrich, LPA, 559 U.S. 573, 573, 130 S.Ct. 1605, 1606 (2010). The FCCPA has the same statutory bona fide error defense; therefore it can be analogized from the Jerman opinion that a mistake of the legal requirements of the FCCPA also does not constitute a bona fide error. The Relief from Judgment Motion only cites to the training provided to employees to comply with the FDCPA and FCCPA, and the fact that the Defendant has a system in place to avoid communications when borrowers have attorneys. The Defendant fails to identify how these procedures were reasonably adapted to avoid the specific error at issue. See Bacelli v. MFP, Inc., 729 F. Supp. 2d 1328, 1333 (M.D. Fla. 2010). Specifically, the error at issue here was not just that the Plaintiffs hired an attorney, but that the Plaintiffs, through their agent, sent cease and desist correspondence to the Defendant, and

the calls still continued to occur. The Defendant fails to assert how its procedures were utilized to avoid error when receiving a cease and desist letter; therefore, this is an insufficient defense.[3]

### vi.   No Evidence That Damages Were Inflated

Finally, as an alleged sixth "meritorious defense," the Defendant argues that the Plaintiffs have inflated the damages. Once again, this is a mere general denial of the allegations of the Plaintiffs and does not constitute a valid meritorious defense. The Defendant refers to phone logs that purportedly show how many calls were made, yet, not surprisingly, fails to attach any such logs to its Relief from Judgment Motion or to its supporting affidavits. The reference to the Plaintiffs' "patently inaccurate affidavits" is a mere conclusory allegation without any support or justification for its assertion. Accordingly, this argument fails to establish a meritorious defense.

Consequently, the general denials made by the Defendant are insufficient to establish any meritorious defenses that would constitute a complete defense to this Action. The Defendant's failure to aver a clear and definite factual recitation of an alleged meritorious defense militates in favor of denial of the Relief from Judgment Motion.   Nonetheless, even if the Defendant could allege meritorious defenses, the Defendant failed to overcome the burden of showing excusable neglect or that vacating the Judgment would not prejudice the Plaintiffs.

### c.      Granting the Relief from Judgment Motion will Prejudice the Plaintiffs

The Defendant failed to timely respond to the properly served Complaint on or before July 31, 2014. The Defendant's failure to do so has prejudiced the Plaintiffs. First, the Defendant's failure has likely resulted in the destruction of evidence that the Plaintiffs would have otherwise had available to prove its case.  Local Rule 3.05(c)(2)(b) prohibits a party from "seek[ing] discovery from any source" prior to the case management meeting, "[u]nless otherwise ordered by the Court." Based

---

[3] Notwithstanding, even if the Court determined that the Defendant's bona fide error defense were meritorious, this defense only relates to the FCCPA claim for which $1,000 was awarded to the Plaintiffs. Therefore, this alleged meritorious defense is not a complete defense to the entire action, which is required to vacate a default judgment. See Davis v. Oldham, No. 6:07-cv-941-Orl-31DAB, 2007 WL 4115292, *5 (M.D. Fla. Nov. 16, 2007).

on the entry of Default and Default Judgment, the Plaintiffs were never afforded an opportunity to serve subpoenas upon the Plaintiffs' cellular service providers, Verizon Wireless and Metro PCS, respectively. Cellular service providers generally contend that they only keep the necessary call data for one (1) year. Thus, the Plaintiffs have likely lost a significant source of evidence with which to prove its case if the Default Judgment is vacated, which is significant prejudice to the Plaintiffs and an unfair windfall to the Defendant.

Second, the Plaintiffs and its counsel have utilized significant time, effort, and cost obtaining and preparing to execute on the Judgment. The Plaintiffs spent significant time and resources preparing its Default Judgment Motion in such a manner that the Judgment could be entered without a hearing, as it was supported by detailed affidavits. Since entry of the Judgment, the Plaintiffs and its counsel have spent significant time in preparation for execution on the Judgment after the expiration of the Rule 62 stay expired.

Further, the Plaintiffs have been forced to research and respond to the Defendant's detailed Stay of Execution Motion, which was filed on November 4, 2014 prior to and in the absence of any Relief from Judgment Motion. It is clear from the filing of the Stay of Execution Motion, coupled with the Defendant's failure to file contemporaneous motion for relief from judgment, that the Defendant's attention was on Stay of Execution Motion to the preclusion of the Defendant's eventual Relief from Judgment Motion, clearly negating any claim the Defendant had that it was taking "prompt action" to address the Judgment.

## II.  The Defendant Fails to Allege Facts Sufficient for Relief Under Rule 60(b)(6)

The Defendant fails to show any extraordinary circumstances that would entitle it to relief under Rule 60(b)(6).  The U.S. Supreme Court opined on the use of the term "any other reason that justifies relief" as the catchall basis for relief from judgment in the context of Bankruptcy Rule 9006 in Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship., 507 U.S. 380, 393 (1991). Bankruptcy Rule 9006 contains exactly the same language as 60(b)(6), and this Court has previously adopted the

Supreme Court's analysis in Pioneer to Rule 60(b)(6). Lender v. Unum Life Ins. Co. of America, Inc., 519 F. Supp. 2d 1217 (M.D. Fla. 2007). Under the Pioneer analysis, to justify relief under Rule 60(b)(6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay. 507 U.S. at 393. If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable. Id.

The Defendant has failed to show any "extraordinary circumstance" that might suggest that the Defendant was without fault in regard to its failure to timely file a response to the Complaint. Instead, it is clear from the Defendant's own Relief from Judgment Motion that the Defendant has significant culpability based its failure to establish minimum procedural safeguards to prevent the clerical or administrative error that resulted in the missed deadlines, or otherwise act to make sure that the Complaint was addressed. The fact that the Defendant's neglect is inexcusable as a matter of law does not permit the Defendant to elect to proceed under Rule 60(b)(6). Quite the opposite, as the "provisions of Rule 60(b) are mutually exclusive, meaning a movant cannot offer reasons for relief under the Rule 60(b)(6) motion that could otherwise be considered under one of the more specific provisions of Rule 60(b)(1)-(5)." Lender v. Unum Life Ins. Co. of America, Inc., 519 F. Supp. 2d at 1223.

### III. The Defendant Fails to Allege Facts Sufficient for Relief Under Rule 60(b)(3)

The Defendant asserts an alternative argument that the Judgment should be set aside because allegedly gross misrepresentations by the Plaintiffs constitute "fraud, misrepresentation, or misconduct by an opposing party," under Federal Rule of Civil Procedure 60(b)(3). The Defendant reached this conclusion by claiming that only sixteen (16) calls were made to the Plaintiffs instead of the hundreds of calls asserted in the Complaint. Under Rule 60(b)(3), a movant must establish fraud by clear and convincing evidence and that such conduct prevented the losing party from fully and fairly presenting his case or defense. Cox Nuclear Pharmacy, Inc. v. CTI, Inc., 478 F.3d 1303, 1314 (11th Cir. 2007).

16

No conduct by the Plaintiffs prevented the Defendant from presenting its case or defense, notwithstanding the fact that there is no evidence whatsoever to show fraud. The Defendant maintained the responsibility for responding to the Complaint, and its own errors contributed to its failure to do so, not any fraud or misrepresentation by the Plaintiffs. Moreover, the Defendant refers to call logs that reflect no calls to the Plaintiffs within four years; however, the Defendant fails to attach such call logs to its Relief from Judgment Motion. (Dkt. 22, p. 23). Therefore, the argument that the Judgment should be set aside pursuant to Rule 60(b)(3) is wholly without merit.

**IV.     An Evidentiary Hearing Was Not Required Under Rule 55(b)**

Upon considering a motion for default judgment, "a court must consider whether an evidentiary hearing on the question of damages is warranted." U.S. v. Fleming. 114 A.F.T.R.2d 2014-5377, 2014 WL 3643517, *9 (M.D. Fla. 2014). "[A] judgment by default may not be entered without a hearing [on damages] unless the amount claimed is a liquidated sum or one capable of mathematical calculation." Id. (quoting United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979) and citing SEC v. Smyth. 420 F.3d 1225, 1231-32 (11th Cir.2005)). "However, where the essential evidence regarding damages is before the Court, such a hearing may be unnecessary." Id. (citing Smyth, 420 F.3d at 1232 n. 13); see also Broad. Music. Inc. v. PRB Productions. Inc., 6:13-CV-1917-ORL-31, 2014 WL 3887509, *2 (M.D. Fla. 2014). Statutory damages under the TCPA and FCCPA are considered "liquidated damages." See Harris v. Beneficial Finance Co. of Jacksonville, 338 So.2d 196, 200 (Fla. 1976). Accordingly, as this Court has already determined, this Action falls within the circumstances in which the Court may award damages without an evidentiary hearing. (Dkt. 16, p. 9).

Furthermore, the Defendant's argument that even where a defaulted party shows no excusable neglect or meritorious defenses, it can later submit evidence to reopen the proceeding and reconsider the damages determination is flawed. The sole authority to which the Defendant cites for this proposition is Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317 (2d Cir. 1986). In Elm State, a

default judgment was entered, the defendant moved to set aside the default judgment, and the court held a hearing on damages pursuant to Rule 55(b)(2) because they were not liquidated or capable of mathematical calculation. Id. at 321. The district court allowed the defendant to submit evidence at a later date; however, "the court then chose to disregard the evidence." Id. Thus, the Second Circuit held that the district court abused its discretion in not accounting for this additional evidence on damages. Id. Elm State is clearly distinguishable from the damages issues here, as there is not, nor was there ever, a need to hold an evidentiary hearing on liquidated damages as discussed above. Cf. Collex, Inc. v. Walsh, 74 F.R.D. 443 (E.D. Pa. 1977) (reopening a case after default judgment entered for the limited purpose of determining damages because they were not liquidated or capable of calculation).  Further, it would be inappropriate to reconsider a damages determination even if the default were set aside because that would imply that the Defendant has admitted to the liquidated damages amount, yet it would be requesting a hearing on the same.

## V.   **Conclusion**

The Defendant is an entity that knows the U.S. legal system well having prosecuted and defendant hundreds of thousands of cases. The Defendant is a sophisticated entity capable, practically and financially, of instituting minimum procedural safeguards for determining that action in response to a summons and complaint is completed. The Defendant should clearly already have a firm policy in place with respect to civil process. It is clear that the Defendant's policies either failed to maintain minimum procedural safeguards or that the Defendant failed to train its employees to follow same resulting in a clerical error or oversight. Such clerical error or oversight does not justify vacating the Judgment under Rule 60(b) because they do not constitute excusable neglect. In fact, the Defendant has identified no facts and circumstances that justify relief from the Judgment under the rigorous standard for relief from a default judgment. Further, the law requires not only excusable neglect, but also, a meritorious defense to vacate a judgment. The Court's Default Judgment Order clearly and eloquently lays out a basis for entry of Judgment that has not and cannot be legally

challenged. There is no averment of law or fact that constitutes a meritorious defense capable of modifying the outcome set forth in the Court's Default Judgment Order and the Judgment. Therefore, the Defendant has failed to meet the rigorous standard necessary to vacate the Judgment and the law militates in favor of denial of its Relief from Judgment Motion.

WHEREFORE, the Plaintiffs respectfully request that this Court deny the Relief from Judgment Motion, and grant such other relief as is necessary and appropriate under the circumstances.

/s/ David P. Mitchell
**DAVID P. MITCHELL, ESQUIRE**
Florida Bar Number:  067249
**WILLIAM PEERCE HOWARD, ESQUIRE**
Florida Bar Number:  103330
Morgan & Morgan, P.A.
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505

And

/s/ John A. Anthony
**JOHN A. ANTHONY, ESQUIRE**
Florida Bar Number:  0731013
**JOHN W. LANDKAMMER, ESQUIRE**
Florida Bar Number: 0675547
**ALLISON C. DOUCETTE, ESQUIRE**
Florida Bar Number: 0085577
**MEGAN M. GREENE, ESQUIRE**
Florida Bar Number: 0102739
Anthony & Partners, LLC
201 N. Franklin Street, Suite 2800
Tampa, Florida  33602
Telephone:  813-273-5616/Telecopier:  813-221-4113
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 7, 2014, a true and correct copy of the foregoing has been furnished via cm/ecf to all counsel of record.

/s/ John A. Anthony
**ATTORNEY**

19