IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NELSON CONIGLIO and JOYCE
CONIGLIO, husband and wife

    Plaintiff,

v.                                          Case No. 8:14-CV-01628-EAK-MAP

BANK OF AMERICA, N.A., a foreign
corporation, f/k/a BAC Home Loans Servicing,
LP,

    Defendant.
_____/

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO AMENDED
AND CORRECTED MOTION TO VACATE AND SET ASIDE DEFAULT
AND DEFAULT JUDGMENT, AND INCORPORATED MEMORANDUM OF LAW**

Nelson Coniglio and Joyce Coniglio (together, the "Plaintiffs"), hereby file this supplemental response to "Bank of America N.A.'s Amended and Corrected Motion to Vacate and Set Aside Default and Default Final Judgment and Incorporated Memorandum of Law" (the "Amended Motion") (Dkt. 24) filed by Bank of America, N.A., a foreign corporation, f/k/a BAC Home Loans Servicing (the "Defendant") on or about November 10, 2014, in the above-captioned cause (this "Action"), and states as follows:

**A.  Background Allegations**

1.  On July 2, 2014, the Plaintiffs initiated this Action by filing a "Complaint and Demand for Jury Trial" (the "Complaint") (Dkt. 1) seeking relief as against the Defendant for violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 et seq. (the "TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA"), and the Florida Consumer Collection Practices Act, §§ 559.55, et seq., Florida Statutes (the "FCCPA").

1

2. After receiving a Clerk's default against the Defendant (the "Default") (Dkt. 7), on August 15, 2014, the Plaintiffs filed their motion for default judgment against the Defendant ("Default Judgment Motion") (Dkt. 8) as to the TCPA and FCCPA counts only. The Default Judgment Motion included a series of affidavits that together support all the relief requested therein under Federal Rule of Civil Procedure 55(b). On August 18, 2014, the Default Judgment Motion was supplemented and supported by the affidavits of Nelson Coniglio, Joyce Coniglio, and Jason Anthony Coniglio (Dkt. 10, 11, 12, and 13). All affidavits filed in connection with the Default Judgment Motion are referred to herein as the "Plaintiffs Affidavits."

3. On October 21, 2014, this Court entered its "Order" (the "Default Judgment Order") (Dkt. 16), granting the Default Judgment Motion under Federal Rule of Civil Procedure 55(b). Also on October 21, 2014, the Clerk entered a "Judgment in a Civil Case" (the "Judgment") (Dkt. 18), in favor of the Plaintiffs and against the Defendant, for damages in the amount of $1,051,000, reserving jurisdiction on the matter of court costs and attorneys' fees.

4. On November 4, 2014, the Defendant filed "Bank of America, N.A.'s Motion to Stay Execution of Final Default Judgment Pending Disposition of Motion to Vacate and Set Aside Default and Default Judgment and Incorporated Memorandum of Law" (Dkt. 19). On November 5, 2014, the Plaintiffs filed "Plaintiffs' Response in Opposition to Defendant's Stay of Execution Motion and Related Memorandum of Law" (Dkt. 20).

### B. Allegations Relating to Relief Requested

5. On November 5, 2014, the Defendant filed "Bank of America N.A.'s Motion to Vacate and Set Aside Default and Default Final Judgment and Incorporated Memorandum of Law" (the "Original Motion") (Dkt. 22) that sought to vacate the Default and relief from the Judgment pursuant to Federal Rules of Civil Procedure 55 and 60(b). The Original Motion

attached six (6) affidavits as exhibits (the "Defendant Affidavits") that in turn purport to attach additional documents.

6. On November 7, 2014, the Plaintiffs filed "Plaintiffs' Response in Opposition to Relief from Judgment Motion and Related Memorandum of Law" (the "Initial Response") (Dkt. 23), in which the Plaintiffs note that the Defendant failed to attach as exhibits any documents referenced in the Defendant Affidavits. All of the exhibits referenced in the body of the Defendant Affidavits, but not attached thereto, are collectively referred to herein as the "Omitted Affidavit Exhibits."

7. On November 10, 2014, without first obtaining leave from the Court, the Defendant filed the Amended Motion that purports to be exactly the same as the Original Motion, except that it attaches some, but not all, of the Omitted Affidavit Exhibits.

8. On November 11, 2014, the Plaintiffs filed "Plaintiffs' Motion to Strike Defendant's Amended and Corrected Motion to Vacate and Set Aside Default and Default Judgment, or Alternatively, for Leave to File Supplemental Response, and Incorporated Memorandum of Law" (the "Motion to Strike").

9. On November 12, 2014, the Court entered an order allowing the Plaintiffs to file this supplemental response to the Amended Motion (Dkt. 27). Also on November 12, 2014, the Court granted the Defendant's request for a post-Judgment stay pending resolution of the Amended Motion. (Dkt. 26).

### C. Fundamental Problems With Omitted Affidavit Exhibits

10. There are several flaws related to the Defendant Affidavits and corresponding Omitted Affidavit Exhibits. This is particularly the case with respect to the 134-page seemingly computerized call log (the "Call Log"), a copy of which is attached as an exhibit to the affidavit

of Laura Nokes (the "First Nokes Affidavit"), putatively an employee of the Defendant but seemingly unrelated in all respects to the facts of the underlying controversy, for the ironic purpose of somehow establishing that the Defendant was not harassing the Plaintiffs at relevant times that appear to be captured in this barely authenticated hearsay document.

11. It cannot be determined from the Defendant Affidavits or the Call Log (i) who prepared the Call Log, (ii) whether it was prepared for litigation, (iii) what date was used to compile it, (iv) what search terms or other features were utilized to retrieve the underlying information, and (v) whether the information is complete or in some way redacted or truncated. The Defendant Affidavits do nothing to explain, support, or expound on the details of the Call Log. Reports such as the Call Log are highly customizable, yet the Defendant never produced an outbound dialer report for Joyce Coniglio's cellular phone number, (813) 244-1327, simply claiming that there were no calls to that number. The Defendant's choice to produce a Call Log based upon the loan number, rather than providing an outbound dialer report for each of the Plaintiffs' cellular phone numbers reinforces the deficiencies of the Call Log and the alleged defenses associated therewith. Accordingly, this Call Log does not enable the Defendant to meet its burden of providing a "meritorious defense" required for relief from the Judgment.

12. The Call Log clearly shows hundreds of telephone calls, and in this respect it tends to validate the Plaintiffs' averments of chronic harassment, as the Call Log is consistent with the pattern identified in the Plaintiffs Affidavits. Although the Defendant denies use of an automatic dialing system, the Call Log belies this proposition. For example, the Call Log indicates that the "User" is frequently listed as "LM DIALER." Occasionally, however, the "User" is listed as the name of a person, signifying that the "LM DIALER" is in fact a predictive dialer and not a human being; otherwise a name would be listed. (Dkt. 24-1, p. 109).

4

Nonetheless, the deficiencies of the First Nokes Affidavit, which utterly fails to explain or describe the meaning of the details of the Call Log, preclude confirmation of this conclusion. Furthermore, although the Defendant claims that its dialer does not dial numbers randomly and is not a dialer under the definition in the TCPA, the Defendant fails to describe the type of dialer it claims to use instead. There are no allegations in the Amended Motion, or evidence attached thereto, that describe the make and/or model of the dialing software employed by the Defendant to rebut the Plaintiffs Affidavits that a predictive dialer was used.

13. Adding to the deficiencies of the Amended Motion, the Defendant again fails to attach the UPS delivery confirmations to Exhibits "B" and "C." The UPS delivery confirmations are significant to demonstrate that the Defendant actually forwarded the Complaint package to the designated locations. Without them, there is no evidence that "excusable" neglect occurred, and an inference to the contrary can be derived from their repeated omissions. Barring the possibility of repeated negligence, these omissions further buttress the concern that these documents may not exist, or may not support the Defendant's position, calling into question the veracity of the affiant. The Defendant's threshold argument regarding "excusable neglect" relating to the Default is truly strained by these ongoing inexplicable gaffes.

14. In their Amended Motion, the Defendant essentially tacked on an additional page to Exhibit "G." This purports to be a letter from one of the Plaintiffs, dated September 15, 2006, in which he provides the Defendant with his cellular telephone number. The record currently reflects that on November 30, 2009, U.S. Loan Mitigation, LLC sent correspondence on behalf of the Plaintiffs to the Defendant demanding that it cease and desist any further communication with the Plaintiffs, including presumably computerized dunning calls to the cellular numbers guilelessly provided. Accordingly, assuming _arguendo_ that the Plaintiffs consented to

computerized dunning, such consent would have been expressly revoked before the statutory timeframe for the violations asserted in the Complaint. Again, the failure to attach pertinent exhibits is another example of inexcusable neglect by the Defendant.

15. The Amended Motion's additional attachments to Exhibit "H" are only relevant to the "debt collector" analysis under the FDCPA count that was omitted from the Default Judgment Motion. The Plaintiffs have already revealed the FDCPA issue as a red herring at this stage of this Action: the Plaintiffs did not obtain the Judgment on the FDCPA count of the Complaint, but only on the FCCPA count. So these attachments are of no consequence to the Court. There is no good reason for the Defendant to persist in this contrived, misleading, and potentially confusing gambit.

16. Lastly, Exhibit "I" is another affidavit by Ms. Nokes in support of the Amended Motion (the "Second Nokes Affidavit"), wherein Ms. Nokes attests that employees of the Defendant are trained to comply with the FDCPA and FCCPA and that the Defendant employs procedures to avoid violations of the same and to cease communications if a borrower is represented by an attorney. (Dkt. 24-1, p. 175-76). Notably, the Second Nokes Affidavit utterly fails to mention the Defendant's efforts to comply with the TCPA, the statute upon which most of the claims are based. Moreover, as stated in the Complaint and the Default Judgment Motion, on September 8, 2011, the Plaintiffs' attorney sent a cease and desist letter to the Defendant. (Dkt 1, Ex. C). According to the Call Log, however, the Defendant made hundreds of calls to the Plaintiffs home telephone number during the years 2012 and 2013, which completely undermines the assertions of the Second Nokes Affidavit, which states that when the Defendant is notified that a borrower is represented by an attorney, it uses a code to cease communications

directly and "direct[s] all communications to the attorney rather than the residential home loan mortgage borrower." (Dkt. 24-1, p. 176).

17. The Plaintiffs would be severely prejudiced should the Defendant be permitted to set aside the Judgment. In its Default Judgment Motion, the Plaintiffs offered to submit additional evidence to support its claim for damages by requesting permission to serve subpoenas on the cellular phone carriers of the Plaintiffs. (Dkt. 13, p. 17). Since the Plaintiffs were prohibited from seeking discovery until after a case management conference, the Plaintiffs could not serve subpoenas unless the Court granted leave according to Local Rule 3.05(c)(2)(b). However, the non-appearance and failure to answer by the Defendant precluded a case management conference and precluded the Plaintiffs from subpoenaing the phone records. It is the common practice of cellular phone carriers to retain call information for only one (1) year, therefore the Plaintiffs are significantly prejudiced by the almost six (6) month delay the Defendant has caused by failing to answer the Complaint.

18. Not only do the Omitted Affidavit Exhibits fail to establish a meritorious defense as required to set aside a default judgment, their deficiencies and contradictions reinforce the Defendant's inexcusable neglect in handling this action. To be sure, the Plaintiffs Affidavits remain uncontroverted, and the Defendant Affidavits do not approach satisfaction of the burden imposed upon the Defendant in light of this Court's analysis in <u>Insurance Co. of North America v. Morrison</u>, 154 F.R.D. 278, 279 (M.D. Fla. 1994).

### D. <u>Memorandum of Law</u>

Federal Rule of Evidence 803(6) provides that records of "a regularly conducted activity" may be admissible if:

(A) The record was made at or near the time by – or from information transmitted by – someone with knowledge;

(B) The record was kept the in the ordinary course of a regularly conducted activity of a business organization, occupation, or calling, whether or not for profit;
(C) Making the record was a regular practice of that activity;
(D) All of these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that it complies with Rule 902(11) or (12) with a statute permitting certification; and
(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

In order to authenticate evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). A "custodian of the record" or any "other qualified witness" may authenticate a business record. Fed. R. Civ. Evid. 803(6). Although a custodian need not be in control of or have individual knowledge of the specific corporate records, a custodian must be familiar with the record-keeping practices. Imhoff Inv., LLC v. SamMichaels, Inc., No. 10-10996, 2014 WL 172234, *8 (E.D. Mich. Jan. 15, 2014); Savanna Group, Inc. v. Trynex, Inc., No, 10-cv-7995, 2013 WL 66181, *7 (N.D. Ill. Jan. 4, 2013). Furthermore, a qualified witness "need not be the author of the document but must have personal knowledge of the procedure used to create and maintain the document." U.S. v. Reese, 666 F.3d 1007, 1017 (7th Cir. 2012).

Although the First Nokes Affidavit states that Ms. Nokes is familiar with the system that created the Call Log, it fails to states that Ms. Nokes has personal knowledge of the procedure used to create and maintain this document. The First Nokes Affidavit merely states that the "notes for the loan at issue" are contained within this specific system, and that those notes are attached as the Call Log. There is no averment that Ms. Nokes has personal knowledge of how this particular document was created or maintained, or that the Call Log contains the entirety of the "notes" related to this specific loan. Ms. Nokes fails to provide any details or factual assertions whatsoever to demonstrate any personal connection or familiarity with the Call Log or

8

loan at issue, and she further fails to explain her conclusory allegation that the Defendant made 16 calls to telephone number (813) 477-4209 from August 14, 2009 to December 11, 2013. (Dkt. 24-1, p. 24). The generalizations in the First Nokes Affidavit are insufficient to lay a proper foundation for admitting the Call Logs.

### E. Conclusion

In its post-Judgment pleadings and papers, the Defendant improperly applies the standard relevant for setting aside defaults rather than setting aside judgments, and fails to show any <u>excusable</u> neglect as the cause for failing to respond to initial process. It is worth note that the standards established by the Eleventh Circuit have been the law in this jurisdiction for decades, antedating many of the technological advancements that now make it easier than ever for a defendant to timely respond to a lawsuit, such as Courthouse New Service reports (also known as "CNS reports"), Google alerts, e-mail, and electronic filing. The omission of proof of utilization of many of the features that even small law offices (let alone one of the largest financial institutions in the country) utilize to confirm transmission of pleadings, calendar deadlines, and allocate responsibilities leads to a conclusion that this first prong for establishing relief under Rule 60 has not been met.

Moving to the "meritorious defense" prong for relief under Rule 60, the Defendant has not sufficiently alleged a meritorious defense to support relief from the Judgment. As recognized by a long history of cases deciding this issue,

> [i]t is universally recognized as an essential to the obtaining of relief from a default judgment entered with jurisdiction that there should appear in the motion a clear and specific statement showing, not by conclusion, but by definite recitation of facts, that an injustice has been probably done by the judgment, in that the debt or demand was not owing; that there was a valid defense to it, and that on another trial there will in reasonable probability be a different result.

9

<u>Moldwood Corporation v. A.B. Stutts</u>, 410 F.2d 351, 352 (5th Cir. 1969). The filing, re-filings, and the omissions filed in the aftermath of the entry of the Judgment are not clear, are not specific, and do not, by definite recitation of facts, show that an injustice has been done.

Because both prongs must be established by the Defendant, and because the Defendant has failed to establish that either prong has been satisfied, the Judgment must stand and should not be vacated. Nothing filed by the Defendant refutes the Plaintiffs Affidavits.

WHEREFORE, the Plaintiffs respectfully request that this Court deny the Amended Motion, and grant such other relief as is necessary and appropriate under the circumstances.

/s/ David P. Mitchell
**DAVID P. MITCHELL, ESQUIRE**
Florida Bar Number: 067249
**WILLIAM PEERCE HOWARD, ESQUIRE**
Florida Bar Number: 103330
Morgan & Morgan, P.A.
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505

And

/s/ John A. Anthony
**JOHN A. ANTHONY, ESQUIRE**
Florida Bar Number: 0731013
**JOHN W. LANDKAMMER, ESQUIRE**
Florida Bar Number: 0675547
**ALLISON C. DOUCETTE, ESQUIRE**
Florida Bar Number: 0085577
**MEGAN M. GREENE, ESQUIRE**
Florida Bar Number: 0102739
Anthony & Partners, LLC
201 N. Franklin Street, Suite 2800
Tampa, Florida 33602
Telephone: (813) 273-5616
Telecopier: (813) 221-4113
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 17th, 2014, a true and correct copy of the foregoing has been furnished via CM/ECF to all counsel of record.

/s/ John A. Anthony
**ATTORNEY**